UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RPAI WORCESTER LINCOLN PLAZA, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> DICK'S SPORTING GOODS, INC., <br><br> Defendant. | C.A. NO.: 4:20-cv-40143-TSH |

## DEFENDANT DICK'S SPORTING GOODS, INC.'S
## ANSWER TO COMPLAINT AND COUNTERCLAIM

Dick's Sporting Goods, Inc. ("DSG"), for its Answer to the Complaint filed by RPAI Worcester Lincoln Plaza, L.L.C. ("Landlord"), answers as follows.  Any allegation in the Complaint not specifically admitted herein is denied.

1. On information and belief, DSG admits the allegations of paragraph 1.

2. DSG denies the allegations of paragraph 2 regarding its corporate office.  DSG's principal place of business is 345 Court St, Coraopolis, Pennsylvania 15108.

3. Paragraph 3 states a conclusion of law to which no response is required.  To the extent a response is required, DSG denies the allegations of Paragraph 3.

4. DSG admits that it operates a retail store that sells sporting goods and similar merchandise it Worcester, Massachusetts.  DSG denies that Landlord has any claims under the Lease and denies the remaining allegations of paragraph 4.

5. Paragraph 5 states a conclusion of law to which no response is required.  To the extent a response is required, DSG denies the allegations of Paragraph 5.

6. Admitted.

7. DSG admits that the quoted language is a partial excerpt of Section 17.3, with emphasis added by Landlord. DSG denies that this paragraph includes the complete language of Section 17.3, which language speaks for itself.

8. DSG incorporates its responses to paragraphs 1 through 7 above as if fully set forth herein.

9. DSG admits that Exhibit B is a copy of a letter sent by DSG, dated May 19, 2020. DSG denies that paragraph 9 accurately summarizes the contents of that letter, which speaks for itself, and denies that the letter is relevant to this action. Furthermore, other leases are irrelevant to this action.

10. DSG denies the allegations of paragraph 10 on the ground that DSG has not taken that position with respect to this dispute.

11. DSG admits that Exhibits C contains correspondence received by DSG. DSG denies that the contents of that correspondence are accurate, denies that DSG owed additional amounts, and denies that it was in default. DSG denies the remaining allegations of paragraph 11 on this basis.

12. DSG admits that it received the letter attached to the Complaint as Exhibit D. DSG denies that the contents of that correspondence are accurate, denies that DSG owed additional amounts, and denies that it was in default. DSG denies the remaining allegations of paragraph 12 on this basis.

13. DSG admits that it was able to reopen its store to customers on June 8, 2020, pursuant to all applicable mandates and precautions. DSG denies the remaining allegations of paragraph 13.

14. Denied.

15. DSG denies the allegations of paragraph 15 on the ground that DSG has not taken that position with respect to this dispute. DSG further denies that Landlord is entitled to any of the relief sought in the paragraph following paragraph 15.

16. DSG incorporates its responses to paragraphs 1 through 15 above as if fully set forth herein.

17. Denied.

18. DSG admits that RPAI has made a demand but denies that the amounts are owed. DSG denies the remaining allegations of paragraph 18.

19. Denied. DSG further denies that Landlord is entitled to any of the relief sought in the paragraph following paragraph 19.

## GENERAL DENIAL

DSG denies any remaining allegations not expressly admitted herein. DSG expressly reserves the right to amend and/or supplement its answer.

## PRAYER FOR RELIEF

DSG denies that Landlord is entitled to the relief requested in its prayer for relief, or to any relief whatsoever. DSG requests that the Court dismiss the Complaint with prejudice and that Landlord take nothing thereby.

## AFFIRMATIVE DEFENSES

DSG asserts the following affirmative defenses. By stating the following defenses, DSG does not assert or admit that any of Landlord's allegations are true, or that DSG bears the burden of proving a particular defense.

1. Landlord fails to state a cause of action upon which relief can be granted.

2. Landlord's claims are barred by the doctrines of estoppel and waiver.

3.      Landlord's claims are barred by specific provisions in the Lease, including Section 17.16, which provides for the equitable abatement of Rent if DSG's use and enjoyment of the Demised Premises is deprived or impaired for any reason, as well as Section 2.6 of the Lease, which provides, in part, for the right to abate Rent where DSG is unable to operate at the Demised Premises consistent with legal mandates, rules, and regulations.

4.      Landlord's claims are barred by Landlord's own unclean hands.

5.      Landlord's claims are barred by Landlord's breach of its own obligations under the Lease.

6.      For the period of DSG's closure during the COVID-19 pandemic, DSG's payment of Rent was excused pursuant to the doctrines of frustration of purpose and impossibility.

## **RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

The Complaint does not describe the claims alleged against DSG with sufficient particularity to enable DSG to determine all defenses it has to the count alleged in the Complaint. DSG has not knowingly or intentionally waived any applicable defenses, and reserves the right to assert and rely upon any other applicable defenses that may become available or apparent during the course of this dispute.  DSG therefore reserves the right to assert additional defenses that may be pertinent to the Complaint once the precise nature of each claim is ascertained through discovery and investigation.

## **COUNTERCLAIM**

DSG, for its Counterclaims against Landlord, states and alleges:

1.      This dispute concerns whether DSG is entitled to invoke express rights concerning Rent under its retail lease.  Landlord demands that DSG pay amounts that are not owed under the lease.

2. DSG and Landlord are parties to a lease, dated January 2, 2001 (as amended, the "Lease"), pursuant to which DSG leases certain premises ("Demised Premises") at a shopping center known as Lincoln Plaza ("Shopping Center") in Worcester, Massachusetts.  A true and accurate copy of the Lease is attached to the Complaint in this matter.

3. The purpose of the Lease is for Landlord to provide DSG space to operate a retail sporting goods store open to the public, in a retail shopping center operating as an ongoing concern, in exchange for which DSG would make Lease payments to Landlord.

4. Essential to that purpose is Landlord's provision of space to DSG in which to conduct in-store retail transactions.

5. Reflecting the intent of the Lease, DSG operates a sporting goods store in the Demised Premises.

6. In response to the COVID-19 pandemic and related state orders and mandates, and in concern for the safety and health of employees, customers, and the general public, DSG was forced to close to the public beginning in March 2020.  DSG was closed from March 19, 2020 through June 7, 2020.  As a result, DSG's obligations to pay Rent were reduced or wholly abated over the course of months for a number of reasons:

   (a) Section 17.16 provides that if for "any" reason, Tenant shall be "deprived of or impaired in the use and enjoyment of the Demised Premises and Common Areas as herein provided, the Rent to be paid by Tenant shall be equitably abated" during any such period;

   (b) Similarly, Section 2.6(b) allows DSG to abate Rent "if at any time the applicable zoning shall not permit the retail sale of any and all types of wearing apparel or sporting goods in the Demised Premises"; and

   (c) The purpose of the Lease—to operate a retail sporting goods store open to the public in a retail shopping center operating as an ongoing concern and capable of supporting in-store transactions—was frustrated.

7. Contrary to Landlord's assertions, DSG has paid all amounts actually due pursuant to the Lease.

8. DSG respectfully seeks a declaration of its rights under the Lease, including a declaration that:

  (a)  Pursuant to Sections 17.16 and/or Sections 2.6, DSG's obligations to pay rent were abated during its closure due to the COVID-19 pandemic;

  (b)  The purpose of the Lease was frustrated during DSG's closure; and

  (c)  DSG is not in default under the Lease.

9. DSG also seeks damages, including a refund of $35,907.99 for the proportionate share of Rent it paid for the portion of March and June DSG was closed, and all other remedies available under law and the Lease, including attorneys' fees and costs.

## FACTUAL ALLEGATIONS

**I. The Relationship Between DSG and Landlord is Governed by the Terms of the Lease, as Amended.**

10. The parties entered into a Lease for the Demised Premises on or about January 2, 2001. The Lease reflected the arm's length negotiation between the parties.

11. The Lease has been amended by a First Lease Amendment dated as of May 1, 2003, a Second Lease Amendment dated as of June 24, 2004, and a Third Amendment of Lease dated as of June 30, 2017.

**II. DSG Was Forced to Close Due to the COVID-19 Pandemic and Related Governmental Mandates.**

12. Beginning March 19, 2020, DSG's store at the Shopping Center was closed due to various issues beyond DSG's control related to the COVID-19 pandemic, including the national emergency announced by the federal government, the mandates and recommendations of various governmental authorities and the U.S. Centers for Disease Control and Prevention, the interest of the public health and DSG's customers and employees, the language of the Lease, and conditions and operations at DSG's store and the Shopping Center.

13. DSG remained closed until June 8, 2020. Between March 19, 2020 and June 7, 2020, DSG was unable to operate its retail business at the Demised Premises. DSG could not invite the public into its store and DSG could not effectuate sales through in-store transactions.

14. Massachusetts Governor Charlie Baker issued a series of Orders in the wake of the COVID-19 pandemic, including but not limited to Order Number 13 (as subsequently

extended, collectively, the "Stay at Home Orders"), which prohibited Tenant from conducting its regular retail operations at the Demised Premises.

### III. DSG's Obligation to Pay Rent Was Abated for the Duration of Its Closure Due to the COVID-19 Pandemic and Related Governmental Mandates.

15. Due to the COVID-19 pandemic, DSG was involuntarily prevented from conducting its normal, in-store retail operations in the Demised Premises from March 19, 2020 until it was able to reopen on June 8, 2020.  Pursuant to the Lease, DSG was entitled to abate all forms of rent for the entire period it was closed due to circumstances surrounding the COVID-19 pandemic.

16. Section 17.16 provides that, if for <u>any</u> reason DSG is impaired in or deprived of the use and enjoyment of the Demised Premises, DSG's rent obligations are equitably abated. Section 17.16 states:

> If at any time there is a breach or default of any of Landlord's representation, warranties or agreements under this Section 17.16 with results in deprivation or impairment in any material respect in the use and enjoyment of the Demised Premises, **or if, for any other reason, Tenant shall be deprived of or impaired in the use and enjoyment of the Demised Premises and Common Areas as herein provided, the Rent to be paid by Tenant shall be equitably abated during any such period**.

(Emphasis added.)  Here, for the entire period of DSG's closure, it was deprived of (and impaired in) its use and enjoyment of the Demised Premises and the Common Areas of the Shopping Center.  Accordingly, DSG was entitled to an equitable abatement of Rent.

17. Additionally, Section 2.6(b) provides that if any applicable law prohibits DSG from selling its merchandise inside the Demised Premises, DSG is likewise entitled to an abatement of Rent.  Specifically, DSG is entitled to abatement of Rent "if at any time the applicable zoning shall not permit the retail sale of any and all types of wearing apparel or sporting goods in the Demised Premises."

18. DSG was unable to carry out its retail operations selling such items in the Demised Premises consistent with current laws and guidelines, including the Stay at Home Orders. Accordingly, DSG was entitled to an abatement of Rent while it was required to close pursuant to "applicable laws."

**IV.   The Purpose of the Lease Was Also Frustrated During DSG's Closure.**

19. Landlord also admits that amounts due under the Lease were "in exchange for the use and occupancy of the Premises as provided for in the Lease." The purpose of the Lease was that, in exchange for rent, the tenant would be entitled to operate a sporting goods store, open to the public, while the Shopping Center was likewise fully operational and capable of supporting the tenant's operations. That purpose was frustrated during DSG's closure.

20. In addition to the terms set forth above, numerous provisions confirm that DSG's rent obligations were in exchange for, and conditioned upon, the availability of the Demised Premises for DSG's retail business purposes, and suitability of the Demised Premises to support those purposes in an ongoing retail Shopping Center operation. This was DSG's purpose in entering into the Lease.

21. For example, in Section 2.6(b), Landlord represents on delivery "the use of the Shopping Center, including the Demised Premises, for retail stores, the Tenant Service Area, the Service Drive and Parking Areas in connection therewith, shall be in material compliance with all laws, ordinances and regulations of public authorities."

22. Section 16.4 states that "Landlord agrees that the Demised Premises shall not be restricted during the term of this Lease from the sale of sporting goods and sporting equipment, apparel or athletic footwear."

23. Under Sections 2.6 and 17.16, Landlord makes several representations regarding the tenant's ability to use the Demised Premises, as well as enjoy its rights regarding the rest of the Shopping Center.

24. Other provisions, including Section 1.4, also establish the parties' intent that the rest of the Shopping Center would be continuously operated as a retail shopping center. Pursuant

to Sections 14.1 and 14.2 of the Lease, Landlord also represents that it will operate the "Common Areas" of the Shopping Center consistent with retail use, and that DSG will enjoy use of that Common Areas, together with the other tenants and Landlord.

25. During DSG's closure, the purpose of the Lease was destroyed. As a non-essential retail business, and in the interest of the safety of DSG's associates, customers, and the public, DSG was prevented from carrying out the operations intended under the Lease.

26. DSG has attempted to engage with Landlord in the pursuit of a resolution, but such discussions have proved unsuccessful. DSG is thus filing this action to seek a declaration of its rights under the Lease in light of Landlord's ongoing demand for payment of Rent not owed pursuant to the Lease.

27. DSG was able to open to the public, while carefully observing all mandated safety and health precautions, on June 8, 2020. However, because DSG had already paid full Rent for March, DSG is entitled to a refund of $35,907.99, representing the proportionate Rent for days it was closed in March and June 2020.

## CAUSES OF ACTION

### COUNT I

<u>Declaratory Judgment – Abatement</u>

28. The allegations set forth above are hereby incorporated as if they were restated in their entirety.

29. A current, ripe and justiciable dispute and controversy exists between the parties and is fully susceptible to judicial resolution. This Court's entry of a declaratory judgment will terminate the uncertainty and controversy that give rise to this action.

30. As set forth above, under the Lease, DSG was entitled to an abatement of Rent pursuant to at least Sections 17.16 and 2.6 of the Lease.

31. Therefore, it is just and appropriate that the Court enter a judgment declaring that:

    a. From March 19, 2020 until its reopening on June 8, 2020, DSG was not obligated to pay Rent under the Lease pursuant to Sections 17.16 and 2.6 of the Lease;

    b. Accordingly, DSG was never in default under the Lease; and

    c. DSG is entitled to recover at least $35,907.99, representing the proportionate Rent for days it was closed in March and June 2020.

## COUNT II

### Declaratory Judgment – Frustration of Purpose

32. The allegations set forth above are hereby incorporated as if they were restated in their entirety.

33. A current, ripe and justiciable dispute and controversy exists between the parties and is fully susceptible to judicial resolution. This Court's entry of a declaratory judgment will terminate the uncertainty and controversy that give rise to this action.

34. As set forth above, under the Lease, DSG's principal purpose in entering into the Lease was for the availability of the Demised Premises for DSG's retail purposes, and suitability of the Demised Premises and Shopping Center to support those uses in an ongoing Shopping Center operation.

35. This purpose was frustrated by the events surrounding the COVID-19 pandemic. The frustration was substantial.

36. It was a basic assumption of the parties at the time they entered into the contract that these events would not occur.

37. The frustration of purpose was not the fault of DSG.

38. Therefore, it is just and appropriate that the Court enter a judgment declaring that:

    a. From March 19, 2020 until its reopening on June 8, 2020, DSG was not obligated to pay Rent under the Lease because DSG's purpose was frustrated;

    b. Accordingly, DSG was never in default under the Lease; and

    c. DSG is entitled to recover at least $35,907.99, representing the proportionate Rent for days it was closed in March and June 2020.

## COUNT III

### Breach of Contract

39. The allegations set forth above are hereby incorporated as if they were restated in their entirety.

40. The Lease constitutes a valid agreement between DSG and Landlord, supported by mutual and adequate consideration.

41. As set forth above, Landlord has breached its obligations under the Lease, because, among other things, it: (1) has not provided Premises that are suitable for, and a Shopping Center capable of supporting, DSG's intended use; (2) it has demanded payment of Rent to which it is not entitled under the Lease; and (3) it has failed to return overpayments under the Lease.

42. DSG has performed all conditions, covenants, and promises required and in accordance with the terms and conditions of the Lease (or those conditions have otherwise been fulfilled or waived).

43. As a direct and proximate result of Landlord's breaches, DSG has suffered harm, including the overpayment of at least $35,907.99.

## COUNT IV

### Return of Money Had and Received

44. The allegations set forth above are hereby incorporated as if they were restated in their entirety.

45. DSG has overpaid to Landlord, for Rents not due, $35,907.99.

46. These amounts belong to DSG. Landlord acted inequitably, including by (a) overcharging DSG for Rent not owed; and (b) failing to reimburse those amounts.

47. Under the circumstances, in equity and good conscience, Landlord should not be permitted to retain the amounts of overpayment, and instead should be required to return such amounts to DSG.

## COUNT V

<u>Award of Attorneys' Fees</u>

48. The allegations set forth above are hereby incorporated as if they were restated in their entirety.

49. As provided in Section 17.18 of the Lease, the prevailing party in any legal proceeding between DSG and Landlord shall be entitled to recover its reasonable attorneys' fees.

50. DSG had to retain legal counsel to respond to Landlord's initiation of legal proceedings and has therefore incurred legal fees.

51. Pursuant to 17.17 of the Lease, in the event DSG is the prevailing party in this action, it shall be entitled to recover from Landlord the legal fees it has incurred and will continue to incur in connection with this proceeding.

WHEREFORE, DSG respectfully requests (a) entry of a Declaratory Judgment in its favor; (b) entry of a Judgment for monetary damages in its favor; (c) an award of attorneys' fees, costs and expenses, and interest in favor of DSG, including pursuant to Section 17.17 of the Lease; and (d) such other and further relief as this Court deems just and proper.

Dated: November 18, 2020

Respectfully submitted,

DICK'S SPORTING GOODS, INC.
By its attorneys,
/s/ <u>Stephen D. Riden</u>
Russell Beck, BBO No. 561031
  rbeck@beckreed.com
Stephen D. Riden, BBO No. 644451
  sriden@beckreed.com
Hannah T. Joseph, BBO No. 688132
  hjoseph@beckreed.com
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts  02110
Phone: (617) 500-8660
Fax: (617) 500-8665

>Tracy E. Reichmuth, *Pro Hac Vice Forthcoming*
>Crowell & Moring LLP
>3 Embarcadero Center, 26th Floor
>San Francisco, CA 94111
>Tel. 415.986.2800
>Fax 415.986.2827
>  *treichmuth@crowell.com*

## CERTIFICATE OF SERVICE

I, Stephen D. Riden, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 18, 2020.

>Respectfully submitted,
>
>/s/ *Stephen D. Riden*